FILED DEC 13 2013 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

**Keith Moreland,**
**Plaintiff,**

**v.** **1:12cv1132 (CMH/IDD)**

**A. Holderfield,**
**Defendant.**

MEMORANDUM OPINION

Keith Moreland, a federal inmate confined in the Eastern District of Virginia and proceeding pro se, has filed a civil rights action, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), claiming that his First Amendment rights were violated when erotic materials were seized from his cell.[1] On July 17, 2013, defendant A. Holderfield filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, accompanied by a supporting memorandum and exhibits. Moreland was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K, and he has filed a response. Defendant thereafter filed a reply to the

[1]The action originally was filed jointly by Moreland and a second plaintiff, Richard Brillhart. However, by Order dated December 28, 2012, it was determined that joinder was inappropriate pursuant to Fed. R. Civ. P. 20(a), so Brillhart was dismissed as a party to this action, and a separate action was opened as to his claims. In addition, because Grounds Two and Three of the initial complaint pertained only to claims asserted by Brillhart, those grounds and the associated defendants were dismissed from this action. Dkt. 6. Defendant points out in the instant motion that one such defendant, E. Chavez, was not specifically dismissed in the earlier order. Def. Mem. at 12. That was an oversight, and defendant Chavez accordingly will be dismissed as a party to the action in the Order accompanying this Memorandum Opinion.

response, and plaintiff filed a sur-reply.[2] For the reasons which follow, defendant's motion for summary judgment will be granted, and summary final judgment will be entered in his favor.[3]

**I. Background**

The following material facts are uncontroverted. On January 28, 2005, Moreland pleaded guilty to two counts of activities regarding material containing/constituting child pornography and one count of unlawful transport of firearms in United States v. Moreland, 3:04-CR-00009-BWC-1 (W.D.Va.). Def. Ex. A. As a result, on April 20, 2005, Moreland was sentenced to serve 156 months in prison. Def. Ex. B. Moreland was designated to FCC Petersburg, which is one of the select Bureau of Prisons ("BOP") facilities that implements a Sex Offender Management Program ("SOMP"), which is designed to coordinate "multiple program components developed to address specific aspects of the [BOP's] strategy to effectively manage its population of sex offenders." Def. Ex. C. By virtue of his two convictions of activities regarding child pornography, Moreland is a convicted sex offender. Def. Ex. A.

All federally-convicted sex offenders are assigned to the SOMP program. Def. Ex. E, ¶ 4. SOMP is comprised of four essential components: psychosexual assessment, management, treatment, and release planning. Id. SOMP is a mandatory program assignment, although some of its components, such as psychological testing and participation in therapy, are voluntary. Id. ¶ 6. A SOMP inmate is not allowed to possess any "risk relevant material," which is defined as material which might interfere with the inmate's rehabilitation by increasing the risk for future sexual offending behavior. Id. ¶ 7. "Risk relevant materials" include (1) any type of

---

[2]A motion to extend the time for failing defendant's reply remains pending on the docket. As the reply has been filed, the motion will be denied, as moot.

[3]Because defendant relies on evidentiary support, the Court finds it appropriate to consider his argument pursuant to the standard for the entry of summary judgment.

pornographic or sexually explicit material such as photographs, drawings, and written materials; (2) any photograph or cut-out from any publication of a nude or partially nude adult or child; (3) pictures or drawings of nude adults and/or children; (4) any sexual apparatus or paraphernalia; (5) any publication or photograph depicting physical abuse ro sexual violence; (6) any obvious collection of pictures, photographs or drawings depicting any individuals in sexually explicit or suggestive poses or situations; (7) any material that depicts, describes, or encourages activities which may lead to violence, sexual crimes, or exploitations; or (8) any other material that, in the professional clinical opinion of SOMP staff, is considered to have the potential to contribute to future sexual offending behavior. Id. SOMP inmates are informed that SOMP staff will routinely search their cells for the presence of items that may further their sexual deviance. Id.

On February 28, 2012, while conducting a routine search for contraband in plaintiff's cell, Office Holderfield discovered several items located underneath plaintiff's mattress. These items included such material as a book on how to draw fantasy females, six homemade drawings of nude cartoon females, one photograph of a topless female, numerous photographs and thumbnail images of females and underage females posing in sexually suggestive or provocative positions, 93 handwritten pages of erotic stories graphically describing sex with minors, and 16 erotic paperback books. Id. ¶ 12 and Att. 5. The items were confiscated as contraband, and SOMP psychology staff members subsequently determined that all were risk relevant materials. Id. ¶ 12.

Pursuant to BOP policy, Officer Holderfield issued an incident report, charging Moreland with the disciplinary infraction of "possession of anything unauthorized." Id. and Att. 5. Following a hearing before the unit discipline committee, Moreland was found guilty of he prohibited act as charged, and received the sanction of loss of thirty days' telephone privileges. Id. ¶ 14 and Att. 5. In addition, Moreland was removed from a voluntary SOMP group treatment

program in which he had been participating. Id. ¶ 13.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact

finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Discussion

Plaintiff alleges that the confiscation of his personal property violated his rights under the First Amendment, and that the resulting sanctions violated his Fifth Amendment right to a post-deprivation hearing. For the reasons which follow, defendant is entitled to summary judgment on both claims.

A. Service of Officer Holderfield

As a threshold matter, Officer Holderfield points out that proper service has not been effectuated on him. By Order dated April 25, 2013, this Court directed the Clerk to attempt service of process upon Officer Holderfield through certified mail to FCC Petersburg. Dkt. 11 at 3. However, that mail was returned as undeliverable on May 7, 2013. Dkt. 13. Plaintiff has moved for service by the United States Marshal, and argued in his response to the Motion for Summary Judgment that the 120 days he is allowed to effect service under Fed. R. Civ. P. 4 had not run, and that even if it had, he should be granted an extension to serve Holderfield because he has been trying diligently to do so. In his reply, defendant acknowledges that the time for service has not run, but points out sensibly that "this matter should be dismissed because serving Officer Holderfield would be futile." Def. Reply Mem. at 7. The Court agrees. As will be discussed infra, it is apparent at this juncture that plaintiff's claims are devoid of even arguable merit, so further efforts to properly effectuate service on the defendant would be a waste of judicial resources. Accordingly, the Court will proceed to dispose of plaintiff's claims on the merits.

B. First Amendment

In his first claim, Moreland contends that the materials that were seized from under his mattress did not violate BOP policy, and that their confiscation violated his rights under the First

Amendment. This argument borders on the frivolous. It is widely recognized that "[p]rison inmates plainly do not retain all the First Amendment freedoms of association and communication that they enjoyed prior to incarceration." Mondonedo v. Roberts, 2012 WL 1416737 at *4 (D. Kan. Apr. 24, 2012). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 108 (1987). In making such a determination, courts must defer to the "expert judgment" of corrections officials. Bell v. Wolfish, 441 U.S. 520, 540 (1979). As to the specific context of Moreland's claim, numerous federal courts have constitutional challenges the SOMP program and restrictions it imposes. See Hopkins v. Grondolsky, 759 F.Supp. 2d 97, 102 - 03 (D. Mass. 2010) ("Hopkins has not met his burden of alleging sufficient facts to establish that the regulations limiting the materials SOMP participants can have were unreasonable, or that the regulations caused an undue burden on his exercise of his constitutional rights.") And in general, "federal courts have consistently upheld prison officials' determinations that certain materials are detrimental to a sex offender's rehabilitation." Highbanks v. Dooley, 2012 WL 346673 at *18 (D.S.D. Feb. 2, 2012). Here, where the criminal behavior that resulted in plaintiff's present incarceration involved his possession of child pornography, it cannot be gainsaid that restricting his access to the kind of sexually explicit materials confiscated by Officer Holderfield served the dual penological interests of maintaining institutional security and furthering plaintiff's personal rehabilitation. Accordingly, plaintiff's First Amendment challenge to the confiscation of the sexually explicit materials he possessed must fail.

Even were that not so, Officer Holderfield would be entitled to qualified immunity for his actions. Clearly, at the time he confiscated plaintiff's contraband, no clearly-established law

provided him with notice that his actions were unconstitutional. Cf. Saucier v. Katz, 533 U.S. 194, 202 (2001); Wilson v. Layne, 526 U.S. 603, 618 (1999).[4] In addition, Officer Holderfield acted to enforce restrictions placed on plaintiff by SOMP, and he was entitled to rely on the facial validity of those provisions. See Michigan v. DeFillippo, 443 U.S. 31, 38 (1979); Harrison v. Deane, 426 Fed. App'x 175, 179 (4th Cir. 2011).[5] Under these circumstances, defendant must be granted summary final judgment on plaintiff's First Amendment claim.

C. Fifth Amendment

In his second claim, plaintiff asserts that his rights under the Fifth Amendment were violated when he was sanctioned after his property was confiscated. However, the sole sanction plaintiff received as the result of the incident at issue was the loss of telephone privileges for thirty (30) days, and such a deprivation does not warrant constitutional protection. Due process mandates procedural safeguards before an inmate can be punished by conditions so dramatically different from the basic range of constraints contemplated by his sentence. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, such liberty interests "will generally be limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as

---

[4]In his Reply to Defendant's Motion, Moreland cites Reno v. ACLU, 521 U.S. 844 (1997) for the proposition that "sexual expression which is indecent but not obscene is protected by the First Amendment." However, his argument is misplaced. In Reno, the Court struck down the Communications Decency Act of 1996, which banned the knowing transmission of obscene or indecent material to minors. Because that case did not arise in the prison context, it is inapposite here, because as noted above, a prisoner's First Amendment freedoms are not co-extensive with those of persons who are not incarcerated. Mondonedo, 2012 WL 1416737 at *4.

[5]Plaintiff's argument in his Reply that the SOMP regulations are overbroad and unconstitutional is at odds with a wealth of authorities that have upheld those regulations as a reasonable restrictions on inmates' First Amendment rights. See, e.g., Locke v. Heck, 1:10cv1106 (E.D. Va. 2013) (O'Grady, J.); Hunsaker v. Jimerson, 2011 WL 4374801 (D.Colo. 2011); Hughbanks v. Dooley, 2010 WL 4366103 (D.S.D. 2010); Hopkins v. Grondolsky, 759 F.Supp.2d 97 (D.Mass. 2010); Frazier v. Ortiz, 2010 WL 924254 (D.Colo. 2010).

to give rise to protection by the Due Process Clause by its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. On the other hand, due process protections attach only when an inmate is deprived of such a liberty interest. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005). Federal courts recognize that a short-term loss of telephone privileges implicates no liberty interest and triggers no due process protection. Boriboune v. Litscher, 91 Fed. App'x 498, 500 (7th Cir. 2003); see also, Johnson v. Vroman, 2006 WL 1050497 at *2 (W.D. Mich. 2006) (finding that a six-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would warrant due process protection). Thus, plaintiff's month-long loss of telephone privileges simply did not rise to a level deserving of constitutional protection.

In his Reply to Defendant's Motion, Moreland argues that his second claim is intended not as a challenge to the sanction he received, but rather to absence of a post-deprivation hearing. This position is belied by the record. The declaration of Dr. Forbes supplied by defendant describes the post-deprivation hearing plaintiff received, and the attached Incident Report reflects that plaintiff received a copy of Officer Holderfield's report and was given an opportunity to make a statement with respect to the charges. Def. Ex. E ¶ 14 and Att. 5. The disciplinary committee ruled against plaintiff based on the "Incident Report and greater weight of the evidence." Id. Here, then, defendant is entitled to summary judgment on Moreland's claim that he was denied due process in his disciplinary proceeding.

Lastly, to the extent that plaintiff seeks injunctive relief in the form of return of his confiscated materials, he plainly is entitled to no relief. The items seized were contraband, and a prisoner has no constitutionally-protected property interest in contraband and is not entitled to its

return. See Bagley v. Lanham, 1994 WL 200718 (4th Cir. May 23, 1994); Becon v. McKie, 2001 WL 34681740 (D.S.C. 2001).

### IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and summary final judgment will be entered in his favor. Defendant E. Chavez will be dismissed as a party to the action, and plaintiff's Motion for Extension of Time to File Reply will be denied, as moot. An appropriate Order shall issue.

Entered this 13th day of December 2013.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia